O

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION**

| | | |
|---|---|---|
| CINDY PIPKIN, | ) | Case No. EDCV 12-01567-MLG |
| | ) | |
| Plaintiff, | ) | MEMORANDUM OPINION AND ORDER |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of the | ) | |
| Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Plaintiff Cindy Pipkin seeks judicial review of the Commissioner's final decision denying her applications for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") benefits. For the reasons stated below, the decision of the Commissioner is affirmed and the matter is dismissed with prejudice.

**I.  Background**

Plaintiff filed her DIB and SSI applications on April 23, 2009, alleging disability beginning January 1, 2009, due to bipolar disorder, major depression, agoraphobia and migraine headaches. (AR at 42-43, 108.) Plaintiff was born on May 7, 1959, and was 49 years old at the time she filed her applications for benefits. (Administrative Record

1

("AR") at 97.) She completed three years of college and has relevant work experience as a babysitter. (AR at 109, 113.)

Plaintiff's applications were denied initially on August 12, 2009, and upon reconsideration on October 20, 2009. (AR at 46-50, 51-55.) An administrative hearing was held on September 24, 2010, before Administrative Law Judge ("ALJ") F. Keith Varni. Plaintiff, represented by counsel, testified, as did Plaintiff's daughter. (AR at 20-41.)

On November 5, 2010, the ALJ issued an unfavorable decision. (AR at 9-17.) The ALJ found that the medical evidence established that Plaintiff suffered from the severe impairment of a mood disorder. (AR at 11.) The ALJ determined that Plaintiff's impairments did not meet, and were not medically equal to, one of the listed impairments in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Id.) The ALJ further found that Plaintiff retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels with the nonexertional limitation that she could not perform detailed work. (AR at 12.)

The ALJ determined that Plaintiff was capable of performing her past relevant work as a baby sitter. (AR at 16.) He also concluded, at Step Five of the sequential process, that Plaintiff was capable of performing other jobs in the national economy, and therefore Plaintiff was not disabled within the meaning of the Social Security Act. *See* 20 C.F.R. § 416.920(f). (AR at 27.)

On July 25, 2012, the Appeals Council denied review. (AR at 1-4.) Plaintiff timely commenced this action for judicial review. On February 1, 2013, the parties filed a Joint Stipulation ("Joint Stip.") of disputed facts and issues. Plaintiff contends that the ALJ erred by failing to: (1) properly consider the treating physician's opinion; (2) provide a complete and proper assessment of Plaintiff's RFC; (3)

2

1  properly determine whether Plaintiff could perform her past relevant
2  work as a babysitter; (4) obtain vocational expert ("VE") testimony; and
3  (5) properly assess the lay witness testimony. (Joint Stip. at 3.)
4  Plaintiff seeks reversal of the Commissioner's denial of her
5  applications and payment of benefits or, in the alternative, remand for
6  a new administrative hearing. (Joint Stip. at 26.) The Commissioner
7  requests that the ALJ's decision be affirmed. (Joint Stip. at 26-27.)

8

9  **II.  Standard of Review**

10     Under 42 U.S.C. § 405(g), a district court may review the
11  Commissioner's decision to deny benefits. The Commissioner's or ALJ's
12  decision must be upheld unless "the ALJ's findings are based on legal
13  error or are not supported by substantial evidence in the record as a
14  whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1990); *Batson v.*
15  *Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Parra*
16  *v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means
17  such evidence as a reasonable person might accept as adequate to support
18  a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Widmark*
19  *v. Barnhart*, 454 F.3d 1063, 1066 (9th Cir. 2006). It is more than a
20  scintilla, but less than a preponderance. *Robbins v. Soc. Sec. Admin.*,
21  466 F.3d 880, 882 (9th Cir. 2006). To determine whether substantial
22  evidence supports a finding, the reviewing court "must review the
23  administrative record as a whole, weighing both the evidence that
24  supports and the evidence that detracts from the Commissioner's
25  conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1996). "If
26  the evidence can support either affirming or reversing the ALJ's
27  conclusion," the reviewing court "may not substitute its judgment for
28  that of the ALJ." *Robbins*, 466 F.3d at 882.

3

1    **III. Discussion**

2        **A.    The ALJ Gave Appropriate Weight to the Opinion of Plaintiff's**

3             **Treating Physician**

4        Plaintiff contends that the ALJ failed to give controlling weight

5    to the opinion of her treating physician, Dr. Khushro B. Unwalla. (Joint

6    Stip. at 3.) Plaintiff claims that the September 28, 2009 Mental

7    Disorder Questionnaire Form and the February 1, 2010 Work Capacity

8    Evaluation (Mental), both prepared by Dr. Unwalla, establish that she

9    has bipolar disorder and marked limitations in the ability to perform a

10   variety of work-related functions. (Id., citing AR at 276-280, 310-311.)

11   For example, Dr. Unwalla opined that Plaintiff had marked limitations in

12   nine work-related areas and extreme limitations in the ability to

13   respond appropriately to changes in the work setting and the ability to

14   set realistic goals or make plans independently of others. (AR at 310-

15   311.)

16       An ALJ should generally accord greater probative weight to a

17   treating physician's opinion than to opinions from non-treating sources.

18   *See* 20 C.F.R. § 404.1527(d)(2). The ALJ must give specific and

19   legitimate reasons for rejecting a treating physician's opinion in favor

20   of a non-treating physician's contradictory opinion. *Orn v. Astrue*, 495

21   F.3d 625 (9th Cir. 2007); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.

22   1996). However, the ALJ need not accept the opinion of any medical

23   source, including a treating medical source, "if that opinion is brief,

24   conclusory, and inadequately supported by clinical findings." *Thomas v.*

25   *Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *accord Tonapetyen v.*

26   *Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). The factors to be

27   considered by the adjudicator in determining the weight to give a

28   medical opinion include: "[l]ength of the treatment relationship and the

4

frequency of examination" by the treating physician; and the "nature and extent of the treatment relationship" between the patient and the treating physician. *Orn*, 495 F.3d at 631-33; 20 C.F.R. §§ 404.1527(d)(2)(i)-(ii), 416.927(d)(2)(i)-(ii).

The ALJ provided several legitimate reasons for refusing to give Dr. Unwalla's September 28, 2009 and February 1, 2010 opinions controlling weight, each of which was supported by substantial evidence in the record. First, the ALJ noted that the extreme limitations found by Dr. Unwalla were unsupported by the medical record as a whole or by Dr. Unwalla's own treatment records. (AR at 14, 15.) For example, the consultative examining psychiatrist, Dr. Linda M. Smith, M.D., found that Plaintiff did not have bipolar disorder or any other psychiatric diagnosis and that there was evidence of Plaintiff exaggerating her symptoms. (AR at 244-250.) The consultative examining neurologist, Dr. Robert A. Moore, M.D., found no neurological problems and determined that Plaintiff could perform a wide range of work without any serious restrictions. (AR at 251-254.)

If a treating professional's opinion is contradicted by an examining professional's opinion, which is supported by different independent clinical findings, the Commissioner may resolve the conflict by relying on the latter. *See Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995); *see also Orn*, 495 F.3d at 632 (ALJ may reject opinion of treating physician in favor of examining physician whose opinion rests on independent clinical findings). Because Drs. Smith and Moore's opinions were based upon their own independent examination of Plaintiff, the ALJ properly relied upon those opinions in rejecting Dr. Unwalla's.

Similarly, the reviewing State Agency physicians determined that there was no evidence of a medically determinable mental impairment and

1    that Plaintiff had only mild limitations in activities of daily living
2    and moderate limitations in maintaining concentration, persistence and
3    pace. (AR at 256-274.)

4         In addition, the ALJ noted that the severe functional limitations
5    found by Dr. Unwalla were not supported by Dr. Unwalla's own treatment
6    notes or mental status examinations of Plaintiff. (AR at 14-15.) The
7    Commissioner may take into account whether a medical opinion is
8    internally inconsistent in determining the weight to accord the
9    evidence. *See* 20 C.F.R. § 404.1527(c)(2); *see also Johnson v. Shalala*,
10    60 F.3d 1428, 1432 (9th Cir. 1995) (holding that ALJ properly rejected
11    physician's determination where it was "conclusory and unsubstantiated
12    by relevant medical documentation").

13         The ALJ also rejected Dr. Unwalla's February 1, 2010 opinion
14    because it was a "check-the-box" form without any supporting clinical or
15    laboratory findings. (AR at 14.) The February 1, 2010 opinion is a two-
16    page report, in which Dr. Unwalla merely checked off preprinted choices
17    and did not provide any elaboration or explanation for his opinions. (AR
18    at 310-311.) Thus, it was reasonable for the ALJ to refuse to give
19    significant weight to Dr. Unwalla's opinion. *See Johnson*, 60 F.3d at
20    1432; *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996) (ALJ
21    permissibly rejected "check-off reports that did not contain any
22    explanation of the bases of their conclusions").

23         Finally, the ALJ determined that Dr. Unwalla's reports were not
24    supported by Plaintiff's activities of daily living or the level of
25    treatment she was receiving. (AR at 14, 15.) The ALJ noted that, if
26    Plaintiff had the extreme functional mental limitations noted by Dr.
27    Unwalla, she "would need round the clock care," and "could not function
28    out of confinement." (AR at 14, 15.) However, contrary to Dr. Unwalla's

extreme restrictions, Plaintiff was able to care for herself, manage funds and take care of her disabled son on her own. *See Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (finding that physician's restrictions, which were so "extreme as to be implausible," were inconsistent with the claimant's ability to maintain a household and care for two young children alone).

In sum, the ALJ provided specific and legitimate reasons for rejecting Dr. Unwalla's September 28, 2009 and February 1, 2010 reports, each of which is supported by substantial evidence in the record. Accordingly, no relief is warranted on this claim of error.

**B.  The ALJ Properly Assessed Plaintiff's RFC**

Plaintiff contends that the ALJ failed to provide a complete and proper assessment of her RFC. (Joint Stip. at 10.) More specifically, Plaintiff argues that the ALJ erred in failing to include in the RFC assessment the mental limitations found by Dr. Unwalla in his September 28, 2009 and February 1, 2010 reports. (Id.)

A claimant's RFC is what he is capable of doing despite his physical and mental limitations. 20 C.F.R. § 404.1545(a)(1); *Cooper v. Sullivan*, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p, 1996 WL 374184, at *1 (S.S.A. July 2, 1996). An RFC assessment is ultimately an administrative finding reserved to the Commissioner. 20 C.F.R. § 404.1527(e)(2). However, an RFC determination is based on all of the relevant evidence, including the diagnoses, treatment, observations, and opinions of medical sources, such as treating and examining physicians. *Id*.

//

A claimant for disability benefits bears the burden of producing evidence to demonstrate that she was disabled within the relevant time period. *Johnson*, 60 F.3d at 1432. The existence of a severe impairment is demonstrated when the evidence establishes more than a minimal effect on an individual's ability to do basic work activities. *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996); 20 C.F.R. §§ 404.1521(a), 416.921(a).[1] Furthermore, the mere existence of a condition is not per se disabling; rather there must be proof of the impairment's disabling severity. *Sample v. Schweiker*, 694 F.2d 639, 642-643 (9th Cir. 1982) (internal citations omitted); 42 U.S.C. § 1382c(a)(3)(C)(I).

Here, Plaintiff has not meet her burden of showing that she has a disabling condition. As discussed above, the ALJ properly gave little weight to Dr. Unwalla's September 28, 2009 and February 1, 2010 medical reports, and therefore the ALJ was not required to include Dr. Unwalla's opinions in his assessment of Plaintiff's RFC. *See Batson*, 359 F.3d at 1197 ("The ALJ was not required to incorporate evidence from the opinions of [claimant's] treating physicians, which were permissibly discounted."). Plaintiff has failed to point to any other evidence in the record to demonstrate that her mental impairment prevents her from sustaining full time work. The ALJ properly referred to the medical evidence in the record in reaching his RFC determination. (AR at 13-16.) This evidence did not demonstrate that Plaintiff's mood disorder was so severe as to prevent her from sustaining full time work for at least 12

---

[1]  The regulations define "basic work activities" as "the abilities and aptitudes necessary to do most jobs", which include physical functions such as walking, standing, sitting, pushing, carrying; capacities for seeing, hearing and speaking; understanding and remembering simple instructions; responding appropriately in a work setting; and dealing with changes in a work setting.  20 C.F.R. § 404.1521(b).

1    months, the requirement to establish disability.

2        The ALJ even gave Plaintiff the benefit of the doubt in determining

3    that Plaintiff could not perform detailed work. (AR at 12.) The

4    examining consultative psychiatrist, Dr. Smith, opined that Plaintiff

5    did not have any mental work restrictions (AR at 250), while the

6    examining consultative neurologist determined that Plaintiff was able to

7    follow complex commands and perform complex tasks. (AR at 253.) The ALJ

8    properly synthesized the medical record and the conclusions of the

9    reviewing physicians in assessing Plaintiff with an RFC for a full range

10   of work at all exertional levels but with the nonexertional limitation

11   of not performing detailed work. The ALJ's RFC assessment was supported

12   by substantial evidence in the record, and therefore, Plaintiff is not

13   entitled to relief with respect to this claim.

14       **C.    The ALJ Properly Determined That Plaintiff Was Capable of**

15            **Performing Her Past Relevant Work**

16       Plaintiff argues that the ALJ erred in determining, at Step Four of

17   the sequential process, that Plaintiff was able to perform her past

18   relevant work as a babysitter both as she actually performed it and as

19   performed in the national economy. (Joint Stip. at 12.) Plaintiff

20   contends that there is not enough information in the record to determine

21   either how Plaintiff actually performed her job or how the job is

22   performed in the national economy. (Id. at 13.) Plaintiff also claims

23   that the ALJ's RFC determination that Plaintiff could not perform

24   "detailed work" contradicts the definition of the job as determined by

25   the Dictionary of Occupational Titles ("DOT"). (Id. at 14.)

26       At Step Four, the claimant bears the burden of showing that she can

27   no longer perform her past relevant work. *See* 20 C.F.R. §§ 404.1520(e),

28   416.920(e).  Although the burden of proof lies with the claimant at step

9

four, the ALJ still has a duty to make the requisite factual findings to support his conclusion. SSR 82-62. This is done by looking at the "residual functional capacity and the physical and mental demands" of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). The claimant must be able to perform either the actual functional demands and job duties of a particular past relevant job, or as generally required by employers in the national economy. SSR 82-61. The two sources of information that may be used to determine how a claimant actually performed her work is a properly completed vocational report and the claimant's own testimony. SSR 82-61, 82-41.

Plaintiff completed a vocational report that described her basic job duties as a babysitter, which was to watch the children, feed them, pick them up, and make sure they were safe. (AR at 109-110.) She also testified to the same general information at the administrative hearing. (AR at 23.) This was sufficient information to determine that Plaintiff was able to perform her past relevant work as actually performed. Although the ALJ did not make any specific findings in determining that Plaintiff was capable of performing her past relevant work as generally performed, any error was harmless because the ALJ properly determined that Plaintiff could perform her past work as she actually performed it. *See Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001) ("We have never required explicit findings at step four regarding a claimant's past relevant work as generally performed *and* as actually performed.") (Emphasis in original.)

In addition, the ALJ's RFC assessment that Plaintiff could not perform "detailed work" does not necessarily conflict with the DOT's description of the job of Child Monitor (DOT 301.667-010). Plaintiff contends that the fact that the job of Child Monitor requires Reasoning

10

Level Three skills, which requires dealing "with problems involving several concrete variables in or from standardized situations," is incompatible with the ALJ's determination that Plaintiff could not perform detailed work. However, Plaintiff stated in her vocational report that, as she actually performed the job of babysitter, she did not use machines, tools, or equipment; she did not use technical knowledge or skills; she did not write or complete reports; she did not supervise other people; and she was not a lead worker. (AR at 109-110.) As noted above, Plaintiff testified that she watched several children, kept them safe, picked them up and fed them. This did not require the performance of any "detailed work."

Moreover, the DOT lists the general duties of a Child Monitor as observing and monitoring play activities, amusing children by reading to or playing games with them, preparing and  serving meals or formula, dressing and bathing the infant or child, accompanying children on walks or outings, washing and ironing clothes, and cleaning the child's quarters and/or other parts of the home. DOT 301.677-010, 1991 WL 672652. None of these activities require the performance of "detailed work," so as to preclude Plaintiff from performing the job of Child Monitor. Accordingly, Plaintiff's argument is without merit.

**D.   Any Possible Error the ALJ Made at Step Five Was Harmless**

Plaintiff contends that the ALJ erred, at Step Five of the sequential evaluation, in concluding that Plaintiff could perform other jobs in the national economy because the ALJ did not identify any particular job that Plaintiff could perform nor did he obtain the testimony of a VE. (Joint Stip. at 17.) This contention is without merit. Because, as discussed in detail above, the ALJ properly determined that Plaintiff could perform her past relevant work as a

11

babysitter at Step Four of the sequential evaluation, any possible error the ALJ made at Step Five was harmless. *See Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012) (harmless error rule applies to review of administrative decisions regarding disability); *Tommasetti v. Astrue*, 533 F.3d 1035, 1042-43 (9th Cir. 2008) (same).

**E.   The ALJ Properly Considered the Lay Witness Testimony**

Plaintiff contends that the ALJ improperly rejected the lay witness testimony offered by her daughter, Sarah Pipkin, and the written statement offered by her friend, Suzy Drew. (Joint Stip. at 21.) In her testimony at the administrative hearing, Ms. Pipkin testified to the following regarding her observations of Plaintiff: she could "barely leave the house by herself;" she experienced panic attacks around strangers and in unfamiliar places; she had severe migraine headaches that sometimes prevented her from getting out of bed; and she often required assistance in driving and running errands. (AR at 35-40.) On June 20, 2009, Plaintiff's friend Ms. Drew completed a Third Party Function Report in which she reported the following observations regarding Plaintiff: she lacked energy to complete household chores; she rarely left her home; she had difficulty concentrating; and she was afraid of going out alone and of being in crowded places. (AR at 137-144.)

The ALJ rejected both Ms. Pipkin's and Ms. Drew's statements based upon the following reasons: (1) they each have a familial or quasi-familial financial interest in Plaintiff receiving benefits; (2) they are not medical doctors or other qualified experts and therefore cannot give a qualified opinion as to Plaintiff's impairments or ability to perform work activity; and (3) their opinions are not supported by Plaintiff's medical records. (AR at 13-14.)

12

A lay witness can provide testimony about Plaintiff's symptoms and limitations. *See Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). "Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001); *see also Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993). Appropriate reasons include testimony unsupported by the medical record or other evidence and inconsistent testimony. *Lewis*, 236 F.3d at 512.

The Court finds that it was improper for the ALJ to discredit the two witnesses' statements on the ground that they each might have a financial interest in Plaintiff obtaining benefits. While some courts have held that an ALJ may consider a witness' financial interest in the award of benefits in evaluating their credibility,[2] the Ninth Circuit has consistently held that bias cannot be presumed from a familial or personal relationship. *See, e.g., Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1298 (9th Cir. 1999). This is because a personal relationship is a necessity for lay witness testimony since it is provided by people "in a position to observe a claimant's symptoms and daily activities." *Dodrill*, 12 F.3d at 918. The ALJ's reasoning that witnesses who live with or support a claimant are not credible for reasons of bias cannot be considered legally proper, since the same rationale could be used to reject lay witness testimony in almost every case.

The Court also finds that the ALJ's rejection of Ms. Pipkin's and Ms. Drew's lay witness statements based upon the fact that neither of

---

[2] *See Buckner v. Apfel*, 213 F.3d 1006, 1013 (8th Cir. 2000); *Rautio v. Bowen*, 862 F.2d 176, 180 (8th Cir. 1988).

the witnesses is a medical professional was also improper.  Although an ALJ need not discuss "medical diagnoses" made by lay witnesses because they "are beyond the competence of lay witnesses and therefore do not constitute competent evidence," nevertheless "lay witness testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence, and therefore cannot be disregarded without comment." *Nguyen*, 100 F.3d at 1467 (citations omitted). Thus, the ALJ erred in finding Plaintiff's daughter and friend incompetent to testify regarding the effect of Plaintiff's symptoms on her ability to work.

Where one or more of the ALJ's several reasons supporting an adverse credibility finding is invalid, the Court applies a harmless error standard. *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (citing *Batson*, 359 F.3d at 1195-1197. As long as there remains "substantial evidence supporting the ALJ's conclusions on ... credibility" and the error "does not negate the validity of the ALJ's ultimate [credibility] conclusion," the error is deemed harmless and does not warrant reversal. *Id*. at 1197; *see also Stout v. Comm'r of Soc. Sec. Admin.,* 454 F.3d 1050, 1055 (9th Cir. 2006)(defining harmless error as such error that is "irrelevant to the ALJ's ultimate disability conclusion").

Although the ALJ improperly rejected the testimony of the two lay witnesses based upon their alleged financial interest in Plaintiff obtaining benefits and the fact that they are not medical professionals, the ALJ also provided a legitimate reason for his credibility determination. The ALJ noted that Ms. Pipkin's and Ms. Drew's statements regarding Plaintiff's alleged mental limitations were unsupported by the medical record. (AR at 14.) As discussed in detail above, there was no credible evidence in the record which showed that Plaintiff's mood

14

disorder was disabling. Aside from Dr. Unwalla's two reports, which the ALJ properly rejected, there was no medical evidence to demonstrate that Plaintiff was unable to sustain full time work because of her alleged bipolar disorder. Inconsistency with the medical evidence is a germane reason for discrediting the testimony of a lay witness. *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). Accordingly, despite the ALJ's improper reliance upon an alleged financial interest and the fact that the witnesses were not medical professionals, any error was harmless because the ALJ provided a proper and legitimate reason for rejecting the witnesses' statements. Accordingly, Plaintiff's claim is without merit.

**IV.   Conclusion**

For the reasons stated above, the decision of the Social Security Commissioner is **AFFIRMED** and the action is **DISMISSED** with prejudice.

DATED: February 13, 2013

Marc L. Goldman
United States Magistrate Judge